LEWIS VERTREES AND WIFE *v.* THOS. S. RUSH ET AL.

**Married Women—Sale of Land—Long Asquiescence.**

Where there has been a long acquiescence in the sale of land by married women, who still survive, and the heirs of the deceased one are willing that the sale should be confirmed, and as a god title can be decreed, it is more equitable to sustain the sales than to set them aside.

**Appeal by one of the Parties—Effect of Reversal of Judgment.**

Although only one of a number of parties against whom a judgment has been rendered, appeal, the case will be reversed in its entirety if the controversy cannot be rightfully adjusted without it.

APPEAL FROM MEADE CIRCUIT COURT.

·July 15, 1867.

OPINION OF THE COURT BY JUDGE WILLIAMS:

After the death of the testator, John Rush, Sr., and in Febuary, 1839, the male legatees bought out the interest of the female legatees from their husbands in the lands devised jointly to all of them.

Lewis P. Rush and Jas. C. Rush bought 578 acres at $3,000, to be paid in two equal annual installments, with interest from date, from Thos. S. and John Rush, Thos. Payne, the husband of Mary Payne, and Lewis Vertrees and A. Bell McGehee, husband of Elizabeth, as witnessed by their bond, and in which they agree to convey their interest, "whenever the purchase money is paid, *holding a lien on the aforesaid land for the purchase money until paid.*" At the same time Thos. S., Lewis P. Rush and James C. Rush and said Payne, Vertrees and McGehee, the husbands of the female legatees, sold their interest to John A. Rush, in 349 acres, at $1,200, in like payments and with same covenants, and Thos. Rush bought under like conditions 348 acres at $1,044. These payments not being made, and the executors, Thos. S. and Jas. C. Rush, having squandered the personal assets, and having become insolvent, appellants Vertress and wife, in September, 1849, filed a bill to have the estate settled, and to assert a lien on the land for the purchase price, else to have the portion of Mrs. Vertrees assigned her, she never having either signed the bond or otherwise conveyed.

The executors, the surviving legatees, and the heirs of the de-ceased legatees, were made defendants. They also set up an assignment to them of Thos. Rush, and assert his lien upon the land.

Mrs. Tyler, the surviving relict of said A. B. McGehee, the · heirs of Mary Payne, deceased, and the heir of Lewis P. Rush, being made parties, also ask for their respective interests.

After several references to a commissioner for reports, etc., it was finally submitted to a *pro tem.* judge, who, May 4, 1866, rendered a final judgment allowing to Vertrees and wife $2,389.79 with interest from February 7, 1859; to Mary Payne's heirs $889.49, with interest from same date; to Mrs. Tyler $1,633.32, with a like interest, and to L. P. Rush's heirs, with same interest, $1,830.35, and gave no lien upon the land. It further ascertained the indebtedness of Jas. C., Thos. S. and John A. Rush "to the estate," giving interest from same time.

There are at least two radical errors in this judgment, if the sales of the land be upheld, then each vendor is entitled to a lien on the lands sold for the unpaid purchase money, with interest from February 11, 1839, the date of the sales; if they be not upheld, then each is entitled to their share of the land in kind.

These purchasers did not become indebted to the executors or *"the estate"* for the amount of their purchase, but to those from whom they purchased.

To adjudicate the rights of the parties, as though the lands were assets in the hands of the executors, and to allow interest only from February 9, 1859, and give no lien, is to make a new contract for the parties detrimental to the vendors in two essentials: 1st, the loss of near twenty years' interest; 2d, the refusal of a lien to secure the payment of what money be due them.

The settlement with the executors should be made, separating the personal assets from the lands, and then the lands should be settled on the basis of the contracts and interest allowed, as therein provided, and a lien given on the lands, and to this end all payments made by the executors should be applied to the discharge of their liabilities as executors, unless where expressly made on account of the lands, and so applied.

The mutual purchasers should be affected so far as liabilities from one to another where so created, and only the remainder adjudged. Vertrees and wife will therefore only be allowed the

balance due Thos. S. Rush after a discharge of his liabilities to his vendors on account of his purchase of land. As there has been a long acquiescence in these sales, and the married women who now survive and the heirs of the deceased one are willing that the sales should be confirmed, and as good titles may be decreed to the vendees, it would be more equitable to sustain the sales than to set them aside, yet, as these married women have never conveyed and have never released their liens for the unpaid purchase money, it would be entirely inequitable to decree their title from them without securing them in the payment of such sums as may be due them therefor.

Although none but Vertrees and wife appeal from the judgment, yet the controversy cannot be rightfully adjusted without its entire reversal, when, on its return, it should again be referred to a commissioner to ascertain the balance due each on the basis herein indicated, and then adjudged a lien upon the land for any unpaid purchase price due the respective parties, but not on account of the personal assets in the executor's hands. Wherefore, the judgment is reversed for further proceedings.

*Walker, Harlan & Harlan, for appellants.*